IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DUSTIN J. MERRYFIELD,

        Plaintiff,

v.                                                            Case No.  23-3066-JWB

STATE OF KANSAS,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motions to dismiss Plaintiff's complaint. (Docs. 15, 22.)  Defendant's motion to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted is fully briefed and ripe for decision.  (Docs. 15, 19, 20).  Defendant's second motion to dismiss is not fully briefed, but the court can address its merits without Plaintiff's response, so the court will consider and make a decision about it in this order as well.  Defendant's first motion to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) is GRANTED IN PART AND DENIED IN PART.  Defendant's second motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.

### I.  Facts

Plaintiff Dustin A. Merryfield's complaint raises constitutional concerns over the Kansas Sexually Violent Predator Act ("KSVPA").  (Doc. 1 at 2.)

The following is the court's summary of the relevant provisions of the KSVPA and its Sexual Predator Treatment Program ("SPTP").  There are two phases to the SPTP: inpatient services and supervised treatment. *See Matter of Merryfield*, 2022 WL 5315734 *1, 518 P.3d 459 (Kan. Ct. App. 2022).  The inpatient services phase is separated into three tiers of inpatient

1

services.  *See id.*  After an individual advances through all the three tiers of inpatient services, he undergoes two levels of supervised treatment: transitional release and conditional release.  *See id.*  As discussed more fully below, each phase in the SPTP has specific procedures and affords different rights to the civilly committed person.

During the inpatient services phase of the SPTP, each person classified as a sexual predator and civilly committed under the KSVPA is examined once every year to determine if his mental condition has changed such that he can be advanced to transitional release (i.e., an annual report of the person's condition).  *See* K.S.A. § 59-29a08(a).  The Secretary for Aging and Disability Services ("Secretary") provides the person committed under the KSVPA a written notice that informs him that he can petition a court for release if the Secretary objects to his release.  *Id.*  The Secretary will send the annual report and the annual notice to the court that originally committed the person.  *Id.*  If the person decides to petition the court for an annual review hearing, the person needs to file a request for a hearing within 45 days of the court filing the written notice.  *See* K.S.A. § 59-29a08(b).  If the person fails to file a request for hearing within the 45-day period, the person waives his right to an annual review hearing until the next annual report is filed.  *Id.*  However, even if the person fails to request a hearing, a judge will conduct an in-camera review of the annual report to determine if the person's condition has changed such that an annual review hearing is warranted.  *See* K.S.A. § 59-29a08(f).

The annual review hearing only considers "whether the person is entitled to transitional release."  *Id.*  At the annual review hearing, the person who is civilly committed carries the burden of proof to demonstrate via probable cause his mental abnormality or condition is significantly changed such that the person can safely enter the transitional release phase.  *See* K.S.A. § 59-29a08(d).  The person civilly committed is not entitled to attend the hearing, but the person does

have a right for an attorney to be present. *See* K.S.A. § 59-29a08(e). At the probable cause hearing, if the person is successful at demonstrating his mental abnormality has changed so that it is safe for him to be placed into transitional release, the court will set a date for a transitional release hearing. *See* K.S.A. § 59-29a08(f).

Unlike the annual review hearing, the person is entitled to be present at the transitional release hearing. *See* K.S.A. § 59-29a08(g). The person is also entitled to counsel under the KSVPA at the transitional release hearing. *Id.* At the transitional release hearing, the person civilly committed has a right to have experts evaluate him. *Id.* The burden of proof also switches to the government at this stage, and it must prove beyond a reasonable doubt that the person's mental abnormality or personality disorder "remains" the same such that the person cannot enter the transitional release stage. *Id.*

A person who enters the transitional release phase must abide by every rule, regulation, and directive associated with the transitional release program. *See* K.S.A. § 59-29a08(j). If the person violates any rule, transitional staff can remove the person from the transitional phase facility and place him back into secure confinement. *Id.* Treatment staff may also request an emergency ex parte order from a district court that orders law enforcement to take the person into custody and return him to the secure commitment facility. *Id.* Notably, when a person is returned to secure commitment from the transitional release phase, there will be a hearing on the matter within two workdays of the court receiving notice of the person being returned to the secure commitment facility. *Id.* At this hearing, the state carries the burden to show probable cause that the person violated the conditions of the transitional release, and the court then decides whether the government successfully proved its case. *Id.* If it did, the person will remain at the secure

commitment facility.  *Id.*  If it did not, the person shall be transferred back to the transitional release facility.  *Id.*[1]

Plaintiff was tried and civilly committed under the KSVPA in 2000.  (Doc. 1 at 2.)  He was diagnosed with antisocial personality disorder.  (*Id.*)  Since 2000, Plaintiff has been perennially re-committed under the KSVPA.  (*Id.*)

Plaintiff raises constitutional concerns about his annual review years 2017, 2018, 2019, and 2020.  (*Id.*)  However, the predominant factual issue appears to be Plaintiff's confusion about his status under the KSVPA following the 2017 annual review and during the year of 2018.  From what the court can gather, Plaintiff advanced to the third tier of the inpatient services phase of the SPTP, whereby he entered a reintegration house in June of 2018 that was supposed to prepare him for transitional release.  (*See* Ex. G, Doc. 15-7 at 1.)  During his time at the reintegration house, he made inappropriate comments to a female staff member, after which he was promptly placed back into secure confinement.  (*Id.*)  During the years 2017, 2018, 2019, and 2020, a Kansas court did not order Plaintiff to be placed in the transitional release phase under KSVPA.  Based on Plaintiff's complaint, it appears he believes he entered into transitional release, which as discussed above, would trigger specific procedures.

Plaintiff raises multiple 42 U.S.C. § 1983 claims,[2] alleging that his procedural due process rights were violated, that his right to access the courts under the First Amendment was violated, and that he has not experienced equal protection under the law.[3]  The bases of Plaintiff's claims is

---

[1] There are additional requirements under the KSVPA to progress into conditional release—the second level of supervised treatment—and to final release.  However, that is not relevant under Plaintiff's petition to the court.

[2] The court notes that the caption of Plaintiff's complaint names as defendant the State of Kansas.  However, Plaintiff alleges in his complaint that individual state actors violated his constitutional rights.

[3] In Plaintiff's complaint, he also raises Sixth Amendment violations pertaining to his right to attend hearings and his right to a speedy trial.  The court addresses those claims in its analysis (Section III).  Moreover, Plaintiff's requests for relief in Section E of his complaint allege both general equal protection violations and equal protection violations for a class of one.

how the KSVPA and its application to him violated his constitutional rights.[4]   Additionally, Plaintiff has sought relief from Kansas state courts for at least some of the claims contained in this petition.  (Doc. 1 at 22.)

Defendant initially filed a motion to dismiss Plaintiff's claims under Fed. R. Civ. P 12(b)(6).  However, upon review of Plaintiff's complaint, the court realized the sole Defendant was the State of Kansas, and hence, it directed Defendant to file a motion to either explicitly waive its Eleventh Amendment immunity or assert it as a basis to dismiss Plaintiff's claims.  Defendant then filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), in which it asserted Eleventh Amendment immunity as a jurisdictional bar against Plaintiff's claims that seek retrospective monetary relief.  (Doc. 22 at 2.)  The court considers each motion in this order.

## II.     Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support its claims.  *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

---

[4] Plaintiff is proceeding pro se.  Hence, the court has done its best to distill and understand Plaintiff's complaint and the factual bases for his constitutional claims.  The court notes that Plaintiff has raised similar claims—and at times, the same claims—in state court proceedings, but that it also appears Plaintiff alleged novel constitutional claims in his petition to this court.  Hence, the court is cautious to dismiss Plaintiff's claims on the basis of res judicata or the Rooker-Feldman doctrine without more detailed briefing by Defendant for some claims.

Additionally, although the complaint typically forms the factual basis for the court's analysis on a Fed. R. Civ. P 12(b)(6) motion to dismiss, the court may take judicial notice of state court documents that bear directly on the case without converting the motion to dismiss into a motion for summary judgment.[5]  *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017).

Plaintiff is also proceeding pro se.  As a general rule, a pro se litigant's pleadings are to be "construed liberally" and held to a "less stringent standard" than pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, a court must not become an advocate for a pro se litigant.  *See id.*  Additionally, a court cannot discover new facts for the plaintiff nor "construct a legal theory . . . that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).  Put differently, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110.

### III.    Analysis: 12(b)(1) Motion to Dismiss Under Eleventh Amendment Immunity

Per the court's order directing Defendant to either waive Eleventh Amendment immunity or assert it as a basis for dismissing Plaintiff's claims, Defendant filed a second motion to dismiss any of Plaintiff's claims for damages pursuant to Fed. R. Civ. P. 12(b)(1) under the theory that the court lacks subject matter jurisdiction for these claims because of the Eleventh Amendment. However, Plaintiff alleges, and Defendant acknowledges, that he is only seeking prospective declaratory and injunctive relief.  (Doc. 1 at 2; Doc. 22 at 2.)  Defendant correctly notes that the Eleventh Amendment does not bar federal courts from granting prospective injunctive or declaratory relief.  (Doc. 22 at 2.)  This is true under *Ex Parte Young*, 209 U.S. 123 (1908), in

---

[5] In the present case, Defendant includes as exhibits to its motion judicial decisions from Kansas state court that bear on the present case. The court takes judicial notice of two exhibits: Exhibit G (Doc. 15-7) and Exhibit F (Doc. 15-6). Plaintiff did not dispute the authenticity of the documents.

which the Supreme Court held that Eleventh Amendment immunity does not extend to state officials sued in their official capacities when the plaintiff seeks prospective relief. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (explaining that *Ex parte Young* applies to injunctive and declaratory relief that is properly characterized as prospective); *see also Tarrant Reg'l Water Dist. V. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (discussing how the doctrine of *Ex parte Young* permits lawsuits against state officials for prospective injunctive relief).

However, the court directed Defendant to file a motion to assert or waive Eleventh Amendment immunity because Plaintiff's complaint named the State of Kansas as the sole defendant.  Hence, although Plaintiff appeared to seek only prospective relief, the court was concerned because Plaintiff failed to name as defendant an actual state official who could be compelled to comply with any relief ordered by the court if Plaintiff prevailed.  The court hoped Defendant (i.e., the State of Kansas) would also recognize this conundrum.  It did not, and as such, failed to argue that Plaintiff's pleadings are deficient and run afoul of the Eleventh Amendment for failing to name and seek prospective remedies against state officials.  Instead, Defendant argued that Eleventh Amendment immunity only bars Plaintiff's claims/requests for monetary damages.  Thus, the court concludes that Defendant has waived its Eleventh Amendment immunity for all of Plaintiff's claims in which he seeks prospective injunctive and declaratory relief.

### IV.   Analysis: 12(b)(6) Motion to Dismiss For Failure to State Claims that Relief can be Granted

Defendant initially filed a motion to dismiss Plaintiff's claims under Rule 12(b)(6).  The court considers those arguments here.

### A.  In Absentia Proceedings and Due Process

Plaintiff alleges the in-absentia language from K.S.A § 59-29a08 that prohibits him from being present at the annual probable cause hearing violates his procedural due process rights. (Doc. 1 at 3.)  One of Plaintiff's stated causes of action is that his constitutional due process rights were violated.[6]  (Doc. 1 at 2.)  However, Plaintiff argues that there is both a Sixth Amendment right to be present at any stage of a *criminal* proceeding and a Fourteenth Amendment due process right to be present at any hearing.  (*Id.*)

Plaintiff's Sixth Amendment argument is inapplicable to his legal status under the KSVPA. There is a Sixth Amendment right to be present at every stage of a criminal proceeding, and this right stems from the Confrontation Clause of the Sixth Amendment.  *See Illinois v. Allen*, 397 U.S. 337, 338 (1970).  Moreover, the Confrontation Clause has been incorporated against the states, so the "Fourteenth Amendment makes the guarantees of this clause obligatory upon the States."  (*Id.*) However, the plain language of the Sixth Amendment denotes that it applies to criminal prosecutions: "In all *criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI (emphasis added).  The Supreme Court in *Hendricks* held that the KSVPA "does not establish criminal proceedings and that involuntary confinement pursuant to the [KSVPA] is nonpunitive."  *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997).    Thus, Plaintiff's Sixth Amendment argument does not establish his right to be present at the probable cause hearings.

Plaintiff also argues that the in-absentia provision violates his procedural due process rights.  "A procedural due process claim consists of two elements: (i) deprivation by state action

---

[6] Plaintiff states in his complaint that a criminal defendant has a Sixth Amendment right to be present at all critical stages of a criminal proceeding.  (Doc. 1 at 3.)  However, the Supreme Court has identified this right to be present at critical proceedings as falling under the Fourteenth Amendment due process clause.  *See Kentucky v. Stincer,* 482 U.S. 730, 745 (1987).  Plaintiff's complaint also explicitly states he is raising Fourteenth Amendment due process violations.  (Doc. 1 at 2.)  Thus, based on the court's interpretation of Plaintiff's complaint, it appears Plaintiff raises in Section B a Fourteenth Amendment procedural due process claim.

of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023).  Here, liberally construing Plaintiff's complaint, he alleges that the state deprived him of a protected liberty interest by not allowing him to attend the annual probable cause hearings, where it is determined if he will remain civilly committed for the next year.  And the inadequate state process is the provision in K.S.A § 59-29a08 that prohibits him from attending the annual hearings.

The issue, however, is whether Plaintiff has a procedural due process right to be present at the annual probable cause hearing.  In addition to the situations covered by the Sixth Amendment Confrontation Clause (i.e., when a defendant is confronting witnesses or evidence against him), there is a right to be present at proceedings under the Fourteenth Amendment Due Process Clause when that presence would ensure a full opportunity to defend against the charges and ensure a fair and just hearing.  *See Kentucky v. Stincer,* 482 U.S. 730, 745 (1987).  However, *Stincer* is a criminal case, and the defendant's due process claim was based upon his exclusion from a competency hearing that was interconnected with his criminal prosecution and trial.  *See id.* at 732–33, 745.  By contrast, "a civil commitment hearing is civil in nature," *United States v. Wood*, 741 F.3d 417, 423 (4th Cir. 2013), and as discussed above, the Court has determined that the KSVPA is properly categorized as a civil statutory scheme.  *See Hendricks*, 521 U.S. at 369.  Still, the Court has "recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *See Addington v. Texas*, 441 U.S. 418, 425 (1979).  And one of those protections, according to multiple courts, is the right to be present at civil commitment hearings.  *See Bell v. Wayne Cnty. Gen. Hosp. At Eloise*, 384 F. Supp. 1085, 1094 (E.D. Mich. 1974); *see Lynch v. Baxley*, 386 F. Supp. 378, 388 (M.D. Ala. 1974); *see Kendall v. True*, 391 F. Supp. 413, 419 (W.D. Ky. 1975).

In response to Plaintiff's argument that he has a constitutional right to be present at the hearings, Defendant argues that the Supreme Court in *Hendricks* upheld the constitutionality of the KSVPA and determined that it does not involve criminal proceedings.  (Doc. 15 at 8.)  As discussed, Defendant is correct that the KSVPA is not categorized as criminal.  But Defendant places too much reliance on *Hendricks*.  The Court in *Hendricks* did not explicitly address the in-absentia provision in § 59-29a08; rather, it merely referenced § 59-29a08 with regard to conducting annual reviews to determine if a person should continue in detention under the KSVPA.  *See Hendricks*, 521 U.S. at 353.  Moreover, the Tenth Circuit in *Ellison v. Ladner*, 767 F. App'x 656 (10th Cir. 2019), explained that the due-process claim in *Hendricks* concerned substantive due process, not procedural due process.  *See id.* at 662 n.8.  Thus, Defendant appears to overstate the Court's holding in *Hendricks* about the constitutionality of the KSVPA due-process procedures.

To be sure, Plaintiff's argument that the in-absentia provision violates his Sixth Amendment right to be present is inapplicable here.  The court acknowledges, though, that it is not clear whether Plaintiff has a Fourteenth Amendment procedural due process right to be present at the annual probable cause hearings.  Hence, at this stage in the proceeding, the court denies Defendant's motion to dismiss Plaintiff's claim in Section B of his complaint that the in-absentia provision violates procedural due process.  Instead, the court also determines that further briefing and, perhaps discovery, will help determine whether Plaintiff has a procedural due process right to be present at the probable cause hearings.

### B.  In-Absentia Proceedings and Equal Protection

Defendant argues that collateral estoppel bars Plaintiff from pursuing his claim in Section C of his complaint that the in-absentia provision in § 59-29a08 violates his equal protection rights.

The court agrees.  To properly preclude an issue from being relitigated under collateral estoppel,
Defendant must satisfy four elements:

> (1) the issue previously decided is identical with the one presented in the action in
> question, (2) the prior action has been finally adjudicated on the merits, (3) the party
> against whom the doctrine is invoked was a party, or in privity with a party, to the
> prior adjudication, and (4) the party against whom the doctrine is raised had a full
> and fair opportunity to litigate the issue in the prior action.

*Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000).

First: the issue raised by Plaintiff here is identical to the issue he raised in a prior case.  In
2010, the Kansas Court of Appeals adjudicated this very issue for Plaintiff in *Merryfield v. State*,
44 Kan. App. 2d 817, 822–23, 241 P.3d 573, 577–78 (2010), where Plaintiff argued "that the
Kansas Sexually Violent Predator Act violates equal protection by treating sexual predators
different than people civilly committed under the Care and Treatment Act for Mentally Ill Persons,
K.S.A. § 59–2945 et seq., and the Care and Treatment Act for Persons with an Alcohol or
Substance Abuse Problem, K.S.A. § 59-29b45 et. seq." *Id.* at 577–78.  In Plaintiff's complaint
filed with this court, he also argues that committed persons under the KSVPA are treated
differently than those committed under the Care and Treatment Act for Mentally Ill Persons and
the Care and Treatment Act for Persons with an Alcohol or Substance Abuse Problem, because
committed persons under the KSVPA are not permitted to attend their annual review hearing.
(Doc. 1 at 4.)  Thus, the issue in the present case is identical to the one raised by Plaintiff in
*Merryfield*, 241 P.3d 573.

Second: whether the issue was fully adjudicated on the merits. The second element is
satisfied when the issue is necessary for the judgement (i.e., the issue was a necessary component
to a court's conclusion.)  *See Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 975 F.2d 683,
687 (10th Cir. 1992).  As discussed, Plaintiff previously raised an equal protection challenge to

the KSVPA, alleging that it violates the equal protection clause because he is treated differently than those who are civilly committed under the Care and Treatment Act for Mentally Ill Persons and the Care and Treatment Act for Persons with an Alcohol or Substance Abuse Problem. In *Merryfield*, 241 P.3d 573, the court explained that Plaintiff's alleged equal protection violation claim could succeed if he demonstrated that individuals civilly committed under all the three acts endure indistinguishable situations yet are treated differently. *Id.* at 578. For example, Plaintiff carried the burden to demonstrate that he and those who were civilly committed under the Care and Treatment Act for Mentally Ill Persons had indistinguishable situations but were treated differently. *Id.* The court held that Plaintiff failed to "establish that sexually violent predators are similarly situated to others confined for mental illness with respect to treatment needs and risks to society." *Id.* Instead, the court explained that the Kansas Legislature intended to treat sexually violent predators differently than other civilly committed individuals because of their treatment and risk to the public. Thus, the court held that the state can treat "those found to be sexually violent predators to treatment and confinement conditions different from those of other civilly committed persons without violating the Equal Protection Clause." *Id.*

Third: Defendant must invoke collateral estoppel against the party who was involved in the prior adjudication. This element is also satisfied. The prior adjudication was clearly against the present Plaintiff, as the case title bears his name. Plaintiff does not dispute this in his response.

Fourth: whether the party against whom collateral estoppel is raised had a fair and full opportunity to litigate the issue. The analysis for this element "focus[es] on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990). The court

concludes that Plaintiff had a fair and full opportunity to litigate the issue in the Kansas state court system.   Based on the facts from *Merryfield*, 241 P.3d 573, Plaintiff's claims were dismissed by the state district court, but Plaintiff was able appeal the state district court's rulings to the Kansas Court of Appeals.   *Id.* at 818.   Some claims were even remanded back to the state district court. Thus, Plaintiff had an opportunity to fully litigate the issues through his initial filings, appeal process, and remand back to the state district court.

Therefore, Plaintiff's claims based on a violation of equal protection are dismissed because this issue has been adjudicated and collateral estoppel bars Plaintiff from raising it here.

## C.  Transitional Release

Plaintiff claims that his procedural due process rights were violated when he was placed back into secure confinement in Larned State Hospital around August 18, 2019.   Plaintiff alleges that he was removed from the transition phase back to inpatient services without a hearing, and that this removal without a hearing violated his procedural due process rights.   Plaintiff argues that he was in the transition phase of his confinement under the KSVPA when he transferred from Larned State Hospital to a reintegration facility in Parsons, Kansas.   (Doc. 1 at 5–6.)   Plaintiff raises these due process violations in Sections D, E, and I of his complaint.

Defendant offers two reasons why Plaintiff's procedural due process claim should be dismissed: (1) this claim is barred by res judicata, and (2) Plaintiff is mistaken about the facts of his progression through the KSVPA treatment.   The court's analysis focuses on Defendant's second argument.

There are three methods for a civilly committed person under the KSVPA to enter into the transitional release phase:

> First . . . if probable cause is found at an annual review hearing pursuant to K.S.A. 59–29a08(a), the district court must hold a second hearing or trial at which the State

13

> has the burden to prove beyond a reasonable doubt that placement of the committed
> person into transitional release is not appropriate. K.S.A. 59–29a08(c)(1), (3).
> Second, if the Secretary of SRS finds that the committed person is a candidate for
> transitional release, authorization may be given for the person to petition the district
> court for placement pursuant to K.S.A. 59–29a10(a). Third, the committed person
> can petition the district court without the Secretary's approval pursuant to K.S.A.
> 59–29a11(a).

*In re Twilleger*, 46 Kan. App. 2d 302, 308–09, 263 P.3d 199, 204 (2011).  Under all three methods,

a court order is required to place a civilly committed person under the KSVPA into the transitional

release phase of the program.  *See id.*  Based on the court's decision in *Matter of Merryfield*, 2000-

PR-000156 (Kan. 9th Jud. Dist. Ct. Sept. 29, 2020), a court order never placed Plaintiff in the

transitional release phase. (Ex. F, Doc. 15-6 at 2.)  When he was transferred from Larned State

Hospital to a reintegration facility in Parsons, he was not in the transitional release stage; rather,

his transfer to the facility in Parsons was in preparation for his entrance into transitional release.

(*Id.*)  A court never ordered that Plaintiff enter into the transitional release stage.  (*Id.*)  Hence, in

effect, Plaintiff was never released from the secured confinement stage.  Therefore, the factual

basis for Plaintiff's complaint does not exist because a court never ordered Plaintiff to be placed

in the transitional phase, so Plaintiff's claims based upon the facts in Sections D, E, and I are

dismissed because they lack a sufficient factual basis.

### D.  Constitutionality of Provisions to Change Status under KSVPA

Plaintiff alleges in Section F of his complaint that the KSVPA provisions that place the

burden on him to demonstrate change in his mental status violate procedural due process.  (Doc. 1

at 8.)  Plaintiff also alleges a procedural due process concern about how under the KSVPA, the

state does not need to explain its findings in the annual report to demonstrate how it determines

Plaintiff's mental abnormality has not changed.  (*Id.*)  To state a procedural due process claim,

Plaintiff must allege facts that satisfy "two elements: (i) deprivation by state action of a protected

interest in life, liberty, or property, and (ii) inadequate state process." *Reed*, 598 U.S. at 236.  For both claims, Plaintiff alleges that he is being deprived of his liberty because he remains civilly committed.  And the inadequate processes are that (1) he bears the burden of demonstrating his mental status has changed, and (2) that the state does not need to explain its findings for why it concludes Plaintiff's mental status has not changed.

To defeat Plaintiff's allegations, Defendant relies on Kansas Supreme Court cases that held the provisions Plaintiff takes issue with are constitutional.  (Doc. 15 at 8–9.)  Although the Kansas Supreme Court may believe that the complained of provisions are constitutionally adequate, those decisions are not binding on this court.  Defendant also relies on a conclusory statement that the provisions are constitutional because of the Supreme Court's ruling in *Hendricks*, 521 U.S. 346. (*Id.* at 9.)  However, as already discussed, the Tenth Circuit has stated that the Supreme Court's analysis of the KSVPA in *Hendricks* pertained to substantive due process concerns.  *See supra* Section III.A.  Therefore, without a more in-depth analysis regarding why the court should adopt the Kansas Supreme Court rulings or regarding why *Hendricks* does apply in this instance, the court declines to dismiss Plaintiff's allegations in Section F at this stage.

### E.  Jurisdiction for Annual Review

The court struggles to understand what Plaintiff is alleging in Section G of his complaint. Based on the references to other Kansas civil commitment acts, Plaintiff may be alleging an equal protection violation.  If so, the court notes that he cannot raise this claim because he is not in a protected class of similarly situated individuals.  (*See supra* Section III.B.)  If Plaintiff is alleging a due process violation, the court cannot make out the basis for that claim—nor can the court become an advocate for the Plaintiff.  Thus, the court dismisses any equal protection or due process claims arising from the facts in Section G for failure to allege facts sufficient to state a claim.

### F.  Holding of Griffin v. Bruffett

Plaintiff does not allege facts supporting a due process or equal protection claim in Section

H based upon *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 598 (2017).  Plaintiff merely restates the

holding and/or analysis from *Griffin*.  Thus, Plaintiff's due process and/or equal protection claims

based upon *Griffin v. Bruffett* are dismissed for insufficient pleadings.

### G.  Rules Equally Applying to Plaintiff and Defendants

Liberally construing Plaintiff's facts in Section J and the related request for relief in Section

E paragraph 30, Plaintiff asks the court to declare a provision from the Kansas Rules of Civil

Procedure inapplicable to the annual review proceedings in the KSVPA (K.S.A. 59-29a08).

First, federal courts have no occasion to "vindicate the supreme authority of federal law"

when a claimant seeks relief in federal court against state officials for violations of state law.  *See*

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  This applies to both

retrospective and prospective relief.  *Id.*  The Court in *Pennhurst* stated that "[a] federal court's

grant of relief against a state official on the basis of state law" would not uphold the supremacy of

federal law, and as such, would intrude upon state sovereignty.  465 U.S. at 106.  Such an intrusion,

according to the Court, results in a conflict with the "principles of federalism that underlie the

Eleventh Amendment."  465 U.S. at 106.  Notably, the Tenth Circuit has interpreted *Pennhurst* to

mean that the Eleventh Amendment "prohibit[s] a federal district court from ordering a state

official to conform their conduct to state law."  *Duran v. Carruthers*, 885 F.2d 1485, 1487 (10th

Cir. 1989).

Hence, because Defendant waived its Eleventh Amendment immunity for prospective

injunctive and declaratory relief, (*See* Section III), the court cannot rely on *Pennhurst* to dismiss

Plaintiff's request for this court to declare a provision from the Kansas Rules of Civil Procedure inapplicable to the annual review proceedings in the KSVPA.

However, there remains a jurisdictional issue with Plaintiff's request.  Plaintiff raises a state-law claim; thus, the court does not have federal question jurisdiction as it does, for example, over Plaintiff's procedural due process claim in Section IV.A.  Instead, the court would have to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to properly consider Plaintiff's request.  The Supreme Court has made clear, though, that federal district courts pursuant to 28 U.S.C. § 1367(c) have discretion when exercising supplemental jurisdiction.  *See City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 173 (1997).  Moreover, federal courts should consider the issue of comity and the following factors when deciding whether to exercise supplemental jurisdiction: "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *See id.*

Here, after considering the nature of the state-law claim and the issue of comity, the court declines to exercise supplemental jurisdiction.  Plaintiff requests this court to declare a state procedural provision inapplicable to the annual review process within the KSVPA—a duly enacted state statutory scheme. If the court were to exercise supplemental jurisdiction over this claim and Plaintiff ultimately prevails, the court's final decision could essentially trespass upon the State of Kansas' sovereignty and improperly interject a federal court into state-specific matters, which are properly left to the determination of the state's legislative body and her courts.  Thus, the court will not exercise supplemental jurisdiction over this state-law claim.

Therefore, Plaintiff's request for the court to declare a provision from the Kansas Rules of Civil Procedure inapplicable to the annual review proceedings in the KSVPA is dismissed.

Plaintiff also alleges, based upon the facts in Section J and the requests for relief in Section E paragraphs 30–32, a violation of his right to access the courts. (*See* Doc. 1 at 26 ¶ 31.) Plaintiff argues that his right to access the courts was violated when the McPherson County District Court struck his filings associated with the annual review years 2018, 2019, and 2020. (Doc. 1 at 11.) His filings were allegedly struck because they did not contain his attorney's signature. (*Id.* at 11–12.) Plaintiff argues that if his documents were faulty for lacking his attorney's signature, then the state's filings are also faulty because they did not have the Attorney General's signature. (*Id.* at 12.)

In response, Defendant argues the *Rooker-Feldman* doctrine bars this court from considering Plaintiff's allegation that his right to access the courts was violated, which would result in a dismissal of Plaintiff's claims. (Doc. 15 at 11–12.) This doctrine precludes an individual from challenging an adverse state ruling in a lower federal court when (1) those claims were "actually decided by a state court," *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415 (1923), or (2) the claims are "'inextricably intertwined' with a prior state-court judgment." *Id.* (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).

Defendant argues that the Rooker-Feldman doctrine bars this court from considering Plaintiff's claims that his constitutional right to access the court was violated because of the state case involving Plaintiff: *Matter of Merryfield*, 2022 WL 5315734. There, Plaintiff argued that in order to be fair to him, the state's filings associated with his annual reviews must be struck because they do not contain the Attorney General's signature. *See id.* at *3. Plaintiff argued that the filings required the Attorney General's signature because the KSVPA is a civil statute, and K.S.A. § 60-211(a) requires that all civil pleadings be signed by an attorney. The Kansas Court of Appeals

agreed that the KSVPA is a civil statutory scheme, but it disagreed with Plaintiff's arguments that it must abide by K.S.A. § 60-211(a).  Instead, the court held that the filing process set forth in KSVPA § 59-29a08(a) governs how the government must file the annual review and the related documents.  *See Matter of Merryfield*, 2022 WL 5315734 at *5.  The court of appeals held that the district court could consider the annual reports submitted by the Secretary even though they did not have the Attorney General's signature.  *Id.*

Plaintiff makes the same argument here: that if his documents were faulty for lacking his attorney's signature, then the state's filings are also faulty because they did not have the Attorney General's signature.  (*See* Doc. 1 at 11–12 (Section J of Plaintiff's complaint).)   He argues that the state must abide by the same rules that require an attorney's signature on his filings.  (*See id.*) Plaintiff raises the same claims as he did in *Matter of Merryfield*, 2022 WL 5315734.  He wants this court to review the adverse state rulings on his claims that his documents should not have been struck for lacking his attorney's signature and that the state must abide by the same rules.  Under the Rooker-Feldman doctrine, a federal district court cannot act as an appellate court for review of adverse state court judgements.  *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002).  Thus, Plaintiff's access-to-court claims predicated on his improper filings and the state being treated the same are dismissed.

## H.  Inadequate and Ineffective Counsel

In section K of Plaintiff's complaint, he alleges that he has not received constitutionally adequate and effective counsel since 2017 (Doc. 1 at 13.)  Defendant moves to dismiss these allegations, but only proffers a conclusory argument about how these claims were previously litigated and are now barred.  Defendant does not specify if it relies on res judicata or the Rooker-Feldman doctrine.  (*See* Doc. 15 at 12.)

However, the court questions whether Plaintiff has a constitutional right to counsel in his KSVPA hearings.  The constitutional right to effective assistance of counsel is derived from the Sixth Amendment, which by its clear terms and language applies to criminal proceedings: "In all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense."  U.S. Const. amend. VI; *see also Favors v. Jesson*, No. CIV. 14-3473 JRT/LIB, 2015 WL 4919969, at *6 (D. Minn. Aug. 12, 2015) (discussing how there is no right to effective assistance of counsel in civil commitment proceedings).  Thus, numerous courts have held that there is no constitutional right to counsel in civil commitment proceedings.  *See Favors*, 2015 WL 4919969, at *6; *see Bumann v. Barr*, No. 8:19CV552, 2021 WL 2002582, at *11 (D. Neb. May 19, 2021) (D. Minn. Aug. 12, 2015); *see Walker v. Scott*, No. 4:16-CV-04021-SLD, 2017 WL 4319116, at *8 (C.D. Ill. Sept. 28, 2017) (stating that the Supreme Court has never applied the right to effective assistance of counsel to civil commitment proceedings).  Instead, the courts have held that any right to counsel in civil commitment proceedings must be a statutory right.  *See e.g., Bumann*, 2021 WL 2002582, at *11 (holding that petitioner's right to counsel in the civil commitment proceeding is derived from a Nebraska statute not the constitution).  As discussed, the Court in *Hendricks* categorized the KSVPA as civil in nature—not criminal.  *See* 521 U.S. at 369.  Thus, the annual probable cause hearing/review is properly categorized as a civil commitment hearing, and Plaintiff would not have a Sixth Amendment right to effective assistance of counsel during it.

Therefore, although Defendant raises conclusory arguments against Plaintiff's ineffective assistance of counsel claim, the court still dismisses the claim because as a matter of law, Plaintiff does not have a *constitutional* right to effective assistance of counsel at his annual probable cause review hearing.

## I.  Due Process Speedy Trial Alleged Violations

In Section L of Plaintiff's complaint, he alleges that his right to a speedy trial was violated because his 2018 Annual review was open for 642 days.  (Doc. 1 at 18.)  The right to a speedy trial found in the Sixth Amendment has been incorporated against the states via the Fourteenth Amendment.  *See Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004).  However, Plaintiff fails to understand the Sixth Amendment right to a speedy trial.  The plain language of the Amendment denotes that it applies to criminal prosecutions: "In all *criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  The right to a speedy trial under the Sixth Amendment attaches when a person is indicted or arrested and detaches when that person is convicted.  *See United States v. Muhtorov*, 20 F.4th 558, 634 (10th Cir. 2021).  As already discussed, Plaintiff is not under criminal prosecution, as the KSVPA only permits civil commitment proceedings.  *See supra* Section III.A.  Thus, Plaintiff's allegations in Section L that his right to a speedy trial was violated are dismissed.

### J.  Failing to Hold Annual Review

Section M of Plaintiff's complaint is titled "Failure to Hold Annual Review."  Based on a liberal reading of Plaintiff's complaint, it seems he is alleging a due process violation for not holding an annual review hearing in 2017.   However, Plaintiff fails to provide the court with sufficient facts, as it is unclear whether Plaintiff is referring to a probable cause hearing or transitional phase hearing.  If Plaintiff is referring to a probable cause hearing, he has not asserted factual allegations to support that he was entitled to a probable cause hearing.  Second, the pleadings also indicate that Plaintiff believes that in 2017, he entered the transitional phase of KSVPA.  If this were the case, under the KSVPA, there would have been a transitional phase hearing.  At the transitional phase hearing, the government would bear the burden to prove beyond a reasonable doubt that Plaintiff's mental abnormality or personality disorder had not substantiality

changed and that he remains a danger to the public.  But as discussed, Plaintiff never entered the transitional release phase.  *See supra* Section III.E.  Thus, he was never entitled to a transitional phase hearing.  Regardless, there are simply insufficient factual allegations in Plaintiff's Section M for the court to come to a conclusion.  Thus, Plaintiff's claims predicated on Section M are dismissed for failure to state a cause of action.

## K.  Lack of Independent Examiner

Defendant does not address Plaintiff's allegation in Section N that the lack of an independent examiner at the annual review probable cause hearing violates Plaintiff's procedural due process rights.  Instead, Defendant states that "Plaintiff alleges no harm requiring . . . relief from this [c]ourt" in Section N.  (Doc. 15 at 13.)

By contrast, Plaintiff satisfies the two elements needed to state a procedural due process claim when he alleged that the state deprived him of his liberty by recommitting him and that this process was inadequate because he was unable to test the State's evidence in an adversarial setting.[7]  (Doc. 1 at 20 ¶ 3.)  Without proper briefing from the Defendant discussing why this claim should be dismissed, the court denies Defendant's motion to dismiss this issue.

## L.  Plaintiff's Equal Protection Class-of-One Requests for Relief

Plaintiff requests this court to analyze some of his claims of equal protection violations under the equal protection class-of-one theory. This is a very specific claim, and a plaintiff prevails under this theory when (1) he demonstrates that he is treated differently than others who are similarly situated "in every material aspect," and (2) that the difference in treatment was without a rational basis.  *See Est. of Redd v. Love*, 62 F. Supp. 3d 1268, 1281 (D. Utah 2014) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)).  Plaintiff has failed to allege

---

[7] To reiterate, "[a] procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process."  *Reed*, 598 U.S. at 236.

facts indicating he was treated differently than others who are civilly committed under the KSVPA. Thus, the court concludes that Plaintiff cannot proceed under this theory, and any requests for relief under the equal protection class-of-one theory is dismissed for insufficient pleading.[8]

## V.       Conclusion

Defendant's motion to dismiss (Doc. 22) Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.  Defendant's motion to dismiss (Doc. 15) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.  Dated this 3rd day of June, 2024.


s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiff's complaint also contains a Section O.  Defendant does not raise material arguments for the claims in Section O, but argues that they are a regurgitation of the allegations in Sections B, C, F, and G.  The court notes that Section O does repeat the allegation in Section B about due process concerns relating to a civilly committed person bearing the burden of proof at an annual review hearing.  Lastly, based on a liberal reading of Section O, Plaintiff appears to assert allegations of equal protection violations.  (*See* Doc. 1 at 22, ¶¶ 10, 11.)  The court has ruled herein that Plaintiff cannot raise equal protection violations (*See supra* Section III.B).  Thus, the court holds that the allegations and claims predicated on the facts in Section O are dismissed because they simply repeat claims which the court has dismissed herein.